Your Honors, Sam Hershey from Whiting Case for Petitioner of Wynnewood Refining Company. I'm joined at Council's table by my colleague Andrew Gershenfeld and by Mr. Houston, who you just heard from. And you just heard from Mr. Houston regarding the harm inflicted on small refineries as a result of EPA's repeated unlawful actions. This case is a concrete demonstration of those harms. Indeed, this challenge pertains to just one small refinery and just one compliance year. But even at that level, EPA's unlawful conduct has inflicted tens of millions of dollars of economic harm. What's worse, Wynnewood has spent nearly five years trying to receive compensation from EPA for the harm caused by its unlawful conduct, and EPA has repeatedly refused to provide it, even though it is legally required to do so. And that should end today. And so Wynnewood is before the Court today seeking, solely as to Wynnewood, remand without vacatur of the April Alternative Compliance Action, what I'll call the April ACA, as well as what we refer to in our briefing as a current oil instruction. I want to give a very brief overview of how we got here. On September 18th, 2018, Wynnewood submitted a petition seeking a small refiner exemption or SRE for the 2018 compliance year. But by the time of the 2018 compliance deadline on March 31st, 2019, which was 194 days after Wynnewood had submitted its petition, EPA still had not ruled. And as Mr. Houston discussed in his presentation, under the RFS statute, EPA had 90 days to rule on Wynnewood's petition. And so Wynnewood retired tens of millions of dollars of RINs to comply with obligations with which it believed it was exempt. And finally, on August 9th, 2019, 235 days after EPA's deadline to rule, EPA granted Wynnewood's petition. Now Wynnewood had done everything EPA says small refineries should do, and this actually gets to Your Honor, Judge Elrod, your question about what EPA recommends small refineries do to ensure they comply with appropriate deadlines. Wynnewood had retired RINs at the compliance deadline, even though the prior year had been found to be exempt. Wynnewood had even purchased RINs ratably, as EPA now counsels small refineries to do. And nonetheless, Wynnewood had suffered tens of millions of dollars of losses from retiring RINs that EPA subsequently ruled that Wynnewood did not have the obligation to retire solely as a result of EPA's failure to follow the law. Now as it turns out, EPA had faced similar situations before and had an established remedy available that would make Wynnewood whole, granting Wynnewood newly replacement RINs. That was the exact relief that EPA had given to the three small refineries in the previous case. And that was a relief that Wynnewood expected to receive. Wynnewood had followed the law and expected EPA to do the same. But that was not to be. EPA, for reasons it has never explained to this day, refused to provide Wynnewood with replacement RINs. Instead, EPA returned to Wynnewood the RINs that Wynnewood had retired, which had either substantially declined in value or expired and become worthless. Far from making Wynnewood whole, EPA chose a remedy that left Wynnewood with tens of millions of dollars of losses. And that leads us to today. Wynnewood sued EPA. That case was stayed pending the Supreme Court's decision in Holly Frontier. And after Holly Frontier was decided, Wynnewood's challenge was remanded to EPA with an instruction that EPA render a new decision within 120 days. And so 120 days after Wynnewood's challenge was remanded, on April 7, 2022, EPA issued two agency decisions, the two that are before your eyes today, the April Denial Action and the April ACA. As Mr. Houston discussed in his presentation, the April Denial Action purports to retroactively revoke Wynnewood's 2018 SRE. The April ACA is a separate agency action that purports to consider and mitigate the hardship on Wynnewood and the other small refineries as a result of the denial action. The April ACA is a separate agency action. It also must pass muster under the Administrative Procedure Act, and it fails to do so as to Wynnewood. I'm going to start with what this court has called a bedrock principle, and I'm referring to this court's decision in the University of Texas case that we said in our brief, where this court said it is a bedrock principle of administrative law that an agency must treat like parties alike. To quote the Burlington case, where an agency, quote, applies different standards to similarly situated entities and fails to support this disparate treatment with a reasoned explanation and substantial evidence in the record, its action is arbitrary and capricious and cannot be upheld. Despite the substantial similarities between Wynnewood and the small refineries in Pruitt and Kern Oil, which we said in our brief, all of whom received replacement Wynns under similar circumstances, EPA's alternative compliance action entirely fails to address Wynnewood's multi-year demand and legal entitlement to Wynne replacement relief. Does your argument, though, play into venue being appropriate in D.C.? I don't believe so, Your Honor. Your whole idea, treat everybody alike, and that it's not that your refineries are different and need special consideration. You want them to be treated like others. Well, to be clear, Your Honor, I'm referring to refineries in previous cases, not part of this administrative action. I'm talking about the Pruitt case and the Kern Oil case, which happened in previous years and aren't part of the administrative action that is relevant to venue. So do you believe that your venue case is exactly the same as the other case that we just heard, or do you believe it's stronger or weaker, and why? So I'm reluctant to, you know, we are a co-petitioner in Mr. Houston's case, and I'm reluctant to draw hideous comparisons as to which one has a stronger or weaker case for venue. I will say that both cases have incredibly strong positions for venue being in this court. And in this case in particular, the administrative action this court is considering, all that EPA did is it looked at the refineries that had previously received exemptions, it was 31 refineries that had, five that hadn't, and just carried those decisions forward to this agency action, said these 31 refineries that previously received an exemption, they're going to have, they're going to have the alternative compliance. And there's no dispute that that previous decision they carried forward, which refineries get exemptions, which ones don't, was entirely based on the exact type of factual, individualized determinations that this court heard about in the previous argument. There's no dispute that the exemptions that were given in those cases were based solely on individual evidence presented by the refineries to EPA, and that was the basis for EPA's decision. So this, this just maps those onto this case, and there's no basis there for thinking that these decisions as to each refinery are based on those same individualized determinations. Your Honor, if I may continue. So anyway, for the first time, by the way, that we hear anything about why Wynnewood is being treated differently from the smaller refineries in crude and current oil that I mentioned before is an EPA's response brief in this case. It's not in the decision document. It's not in the administrative record, despite the fact that this case is a result of a remand from a case in which Wynnewood had challenged EPA saying we're entitled to RIN replacement relief. And that is a problem, and I'm going to get to why it's a problem. But first, let me discuss EPA's purported justification for its disparate treatment of Wynnewood and the other smaller refineries in Pruitt and current oil who received RIN replacement relief in similar circumstances. The only justification EPA offers is that in this point in time today, Wynnewood has reportedly had its 2018 SRA revoked. In other words, EPA does not dispute that as of the day before it issued the April ACA, Wynnewood was in the exact same position as the smaller refineries in Pruitt and current oil and was entitled to the exact same relief. EPA's only argument is that that is no longer the case because EPA has since purportedly decided to retroactively revoke Wynnewood's 2018 SRA. But EPA's purported revocation was invalid. And we cite C-TRAIN and about 10 other cases across a broad array of statutory contexts standing for the proposition that an agency can revoke a vested right in only extremely limited circumstances, none of which applies here. There's no statutory authority that EPA points to to justify the revocation. EPA does not argue that it made a mistake of law or that Wynnewood misled EPA or there was a ministerial error. Is it a vested right? Yes, Your Honor. We believe that when EPA made the determination that Wynnewood was exempt from a compliance from 2018 year that the right vested at that time, that was when EPA returned the RINs to Wynnewood in recognition of the fact that it believed and recognized that we had the right not to comply with those requirements. And Your Honors, that revocation is invalid. Now, given that EPA premises its case on the argument that Wynnewood lacks a valid exemption, you would expect that EPA would at least respond to the cases we cite showing that EPA's position is invalid. But EPA does not say a single word in this brief about C-TRAIN or the related cases. And so that argument is waived. And as we state in our brief and we cite Gorbachev-Urino, where an agency retroactively revokes a right without authority, that purported revocation is void. So that should make things really easy for this Court. Because if Wynnewood and its co-petitioners prevail in their challenge to denial actions, as they believe we should, then there will be no basis for EPA to continue to deny Wynnewood the replacement RINs that we've been seeking for nearly five years. But even without considering what happens in this case— You don't argue that the decision was arbitrary and capricious? Yes, Your Honor. You don't? We do argue that. Yes, Your Honor. We do argue it was arbitrary and capricious. And I'm happy to address that argument if Your Honor would like. You're not—so you are claiming that in this particular circumstance, you're not arguing that the ACA is arbitrary, the enactment of it? We are arguing the ACA is arbitrary and capricious as to Wynnewood to the extent that it did not consider the RIN replacement relief that Wynnewood is seeking. And that EPA does not address that issue until its response brief in this case. And I'm happy—I'll turn right to that. But the EPA's basis for publishing the ACA was the collective impact of the effects flowing from the April denial. So I guess that's back to venue, but I don't understand why that isn't a ruling with nationwide effect as—rather than the specific facts of a given refinery. So Your Honor, I guess I have two points. The first thing is, with respect to the specific harm to Wynnewood, which I think is what Judge Elrod was asking about, the April ACA acknowledges that the burden that EPA faced—and this is—it adopts this burden for itself—is the standard enunciated under Americans for Clean Energy. It says that standard is applicable here. And in that case, the Court found that EPA was bound by our precedents, not to mention basic principles of due process, to reasonably consider and mitigate any hardship caused to obligated parties by reason of its lateness. And so this ties into the arbitrary and capricious argument, Your Honor. EPA fails to consider, much less mitigate, hardships in Wynnewood from the reported retroactive denial of Wynnewood's 2018 SRE petition. Can you answer Judge Smith's question, please? Yes, Your Honor. Your Honor, I think the definitive cases on venue have come out this year, actually. They're the two cases issued first by this Court in Texas, the EPA, and then by Sixth Circuit in Kentucky by the EPA. What both those cases stand for is the proposition that EPA cannot manufacture venues simply by packaging decisions together, right? So EPA, as I said, previously issued these decisions separately as to each small refinery based on that refinery's exemption from compliance. The fact that they're now packaged together doesn't change what those courts called the administrative unit of the action. The administrative unit here is each small refinery, the burden on each small refinery. And it's true, Your Honor, that EPA did not particularly consider Wynnewood's circumstances and the hardship on Wynnewood from having an entitlement that it previously had revoked. But it should have. The fact that it didn't does not create venue because it didn't consider that specific circumstance that is required for Wynnewood based on that administrative unit of the decision, which is each individual small refinery, regardless of how they're packaged. Your Honor, to the extent that Wynnewood is differently situated from other refineries who have received replacement bins in similar circumstances, it is solely a result of EPA's unlawful conduct. There can be no dispute and EPA does not deny that on December 17, 2018, EPA broke the law by failing to rule on Wynnewood's petition within 90 days. There can be no dispute and EPA does not deny that on August 9, 2019, EPA broke the law by failing to provide Wynnewood with replacement bins as it had done with similarly situated refineries. Did Wynnewood agree to the stay or waiting or abeyance or whatever it was called? So to be clear, Your Honor, it depends. I'm not quite sure. Originally, Wynnewood certainly did not agree to EPA taking longer than 90 days to rule on its small refinery exemption petition. And the harm caused to Wynnewood was from EPA, after it had done that and caused Wynnewood to needlessly retire RINs, then return those RINs without issuing replacements. And Wynnewood did not consent to any of those actions. There was a stay during the Holly Frontier case, which maybe what Your Honor is referring to. And Wynnewood did agree to that stay, but that is not part of the prejudice that resulted to Wynnewood. That prejudice had already occurred when EPA took and— Was it long after the 90 days? Long after the original 90 days? Or was it during the original 90 days? It was after, Your Honor. It was after 90 days. Okay. Your Honor, the point is there's been a series of violations of law. Three separate violations of law that EPA has committed in this case cannot stacked on top of each other, create a distinction that allows EPA to treat Wynnewood differently from the way it has treated other similarly situated saw refineries that cannot be the standard that justifies disparate treatment under the EPA and establish principles of due process. And that is why we are seeking the kernel instruction that I mentioned before. In that case, the Ninth Circuit instructed EPA to provide replacement RINs following the remand when the EPA had failed to justify its disparate treatment of Kernel Oil, which is a similarly situated party in that case, to Pruitt, and we would seek the same instructions. But it didn't fail to justify here. It justified, but you just think that the justification is not valid. I disagree, Your Honor. It did fail to justify. The justification needed to be in the decision document. That's the Regents' case from the Supreme Court. That's this Court's data marketing case. There's nothing in the decision document. Or the voluminous administrative record that accompanied the decision document that mentions Wynnewood. So you think the fact that it was denied, and that's the justification, is post-hoc rationalization? Yes, Your Honor. Exactly. That's exactly right. It was a post-hoc rationalization. We heard it for the first time in their brief. On that basis alone, the case law is clear. It's arbitrary and capricious, and remand is required. It needed to be in the decision document. We shouldn't be learning it for the first time. In response, we've been—and the EPA was on notice that it had to address that issue because this case was the result of a remand where that was exactly our argument. We were entitled to replacement RINs, and they just ignored it completely and treated us as if it wasn't an issue, but it is. It's part of the hardship we face as a result of the denial action. All right. Thank you, Mr. Hershey. You can take some time for rebuttal. Thank you very much. All right. I'll ask you to pronounce your name because I'm sure I'll get it wrong. Good morning, Your Honor. My name is Ben Grilio. You would not get that right. There's an extra I in there. Grilio. All right. Thank you, Your Honor. I'm with the Department of Justice representing EPA. With me at counsel's table is Meredith Miller from EPA. All right. I'd like to start with venue, Your Honor. And this case should be dismissed or transferred. As the questions previous have elucidated, this action is nationally applicable. What EPA did with the compliance action is after the denial action was issued, it looked at the landscape and made one single determination as to how to address the compliance obligations for those parties who had received grants in the past but now had denials. And what EPA decided was that it was not going to require any additional compliance obligations for those refineries. That's one nationwide decision. And so it is clearly nationally applicable under the relevant case law. On the face of the rule, the question is not the impact on the particular petitioners. It's the decision. And in this case, it touches 31 refineries, as Judge Elrod pointed out. All those refineries were treated exactly the same and not based on individualized decisions. Similarly, it was based, even if this Court were to believe that it were of local or regional significance, there is a determination of nationwide scope or effect here. This decision was made on EPA's determination that the RFS program as a whole would be threatened by requiring 31 refineries to simultaneously retire 1.4 billion RINs with a significant impact on the functioning of the program going forward and not individualized determinations. Given that, this case should be transferred at night on those reasons. Turning to the merits, however, EPA's compliance action here was reasonable. Some key facts are important, as Judge Elrod was noting. The decision to grant Wynnywood and the other 30 refineries their 2018 compliance exemptions were challenged. And those challenges ultimately were in the D.C. Circuit, and they were stayed in the pendency of Hawley Frontier decision. Prior to the Hawley Frontier decision, there was a 10th Circuit decision in RFA. And on remand, D.C. Circuit sent all of those 2018 petitions back to EPA to evaluate them in light of this intervening case law. At that point, those petitions were pending. And then EPA made the determination in the denial action, which you just heard argument on, to deny those petitions. So, the decision that the compliance action was making is, now that we've denied those petitions, these entities, these refineries, have a compliance obligation. They need to comply for 2018. But to make them comply for 2018 would have significant deleterious effects to the RFS program as a whole. So, what do we do? We gave them, essentially, the compliance exemption, which means that they no longer need to retire or rent for 2018. They have a denial, they would have an obligation, but for this action. But they get to keep the rents that they got back in 2019. How is this case different regarding venue than the fact that the other case was in the 10th Circuit? The ones that all grouped together, were they all, were those all in the same region? Ultimately... I'm just, how did the 10th Circuit case, how was the venue issue decided in that case? Which is just about the same reason what to do about them. Yes. So, it was transferred to the DC Circuit without opposition. So, you're talking about in the prior... The 10th Circuit transferred it to the DC Circuit, no? That's correct, Your Honor. In the prior litigation, in the challenge to the denial of action, and the challenge to the grant, and all the litigation surrounding that, those were all transferred and consolidated in the DC Circuit by the 10th Circuit. So, what EPA did here was it made a reasonable determination that it, in order to continue the functioning of the program, was not going to require all these refineries to retire new rents, given their obligations now that they've had their exemption petitions denied. So, what Wynnywood is asking for is essentially extra relief that we argue is improper here. Well, what do you say to two things that Wynnywood argues that the 90 days had long run, and so there was a problem because of that, and they faced hardship because of that? And then the second argument that the document doesn't deny for the base... Doesn't say that we're not going to allow this because of the denial. It doesn't give that as the reason. Okay. So, the first point, Your Honor, the delay in the decision initially. So, going back in time to 2018, EPA was, in fact, late in deciding their exemption petition. And when EPA made the decision to grant that exemption, it returned their rents as EPA's default. What Wynnywood believes they should have done is also compensated them for the loss due to the delay, the delay remedy. However, once that decision had been challenged, consolidated in the DC Circuit, and then remanded back to EPA, what EPA then did was a new decision. And what EPA did instead of issuing a grant was issue a denial. So, now for 2018, Wynnywood has a denial. They don't have an exemption. So, they're required to comply. And what the compliance action was answering is, not just for Wynnywood, but for all 31 refineries, what's the implication of making everyone comply at the same time? It would be really bad for the program. Therefore, as a result, we're not going to make anyone do any further compliance. So, the question the compliance action was addressing didn't have anything to do with the delay and the 90 days in the grant. The grant was off the table. It was now a denial. The question was, how do we move forward from here? And the decision was to not make- So, 90 days of denial, I mean, the whole delay of the denial is problematic as well. So, the delay from the denial was, the case was stayed with the consent of Wynnywood during the pendency of the RFA and the Hawaii Frontier. But whether or not originally it was a grant or a denial, either way, it was still a delay that did impact them. So, if they had a grant, I would agree with you, Your Honor, but they have a denial. EPA decided to deny their exemption petition. Therefore, for 2018, they have a compliance obligation. What the compliance alternative provided was a relief. They're getting relief here because even though they have an obligation for 2018, what the compliance action is doing is now relieving them of any additional compliance obligations. Okay. What about the second part? So, the second point regarding the action itself and whether or not the action itself needs to address this delay remedy. The fact that it didn't say deny, that it's because it was denied and that's why. Well, the- I think if that is the reason. The compliance action itself clearly says that this is a denial and now that because we have a denial, all of these refiners would have a compliance obligation, but for the action relieves them of their obligation to do any additional compliance. So, it clearly states that it's based on the denial. The compliance action document itself very clearly is anchored in the fact that this is in a post-denial world and this is how things look from here and this is what we're going to do and not require additional compliance for these refineries going forward. So, the question that they were trying to answer was not whether or not Winniwood is The question is now that they have an obligation, are we going to make them comply? All 31 refineries, 1.4 billion RINs. No, that would be bad for the program as a whole. Therefore, we're going forward. And importantly, Winniwood points to two cases, Pruitt and Kern Oil, and says that they are, it's a bedrock principle that like parties are treated alike. And as you noted, Your Honor, the UK did treat all 31 refineries alike in this action. All of the situations who had that grant. The parties that they say are alike are in fact quite different. In Pruitt, EPA initially denied the exemption. The 10th Circuit then vacated and remanded. And on remand, EPA granted. So, in that posture, that refinery had a grant. They had an exemption. Now, EPA had a question. How do we handle a situation in which we initially denied and now we granted? They gave them a remand. And Kern Oil, which notably is an unpublished 9th Circuit case, EPA granted the SRE, the exemption, after the deadline. So, there we're in a situation where there was some delay, and there was losses because of that delay. And the 9th Circuit in that case said that EPA should provide a delay remedy. But that's not the situation we're in here. Here we're in a situation where Winniwood has a denial. They don't have a grant. It was a denial after a grant. Yeah, yeah. The grant was challenged, went up to the DC Circuit, was remanded. And now when it landed back in EPA's lap, they decided to deny it. And now it's a denial. And because it's a denial, they have a compliance obligation. They're required to comply. And once they're required to comply, our question was, how do we make sure that that makes the whole program work? And ultimately determined that requiring all 31 refineries to retire 1.4 billion RENs was not sustainable. So took the compliance action. But any additional remedy beyond that, EPA was not required to provide because the parties had denied. One final point, Your Honor. If you decide that this action was arbitrary and capricious, it should be remanded without instruction. A kernel instruction is not appropriate. And the agency should be permitted to conduct additional investigation. Do you want to address arbitrary and capricious? Or do you think that you already have? I think that I have, Your Honor. This action was not arbitrary and capricious because it reasonably considered all important aspects of the problem. The problem being what happens when 31 refineries that initially had grants now have denials. And it reasonably and fully explained that rationale and was not arbitrary and capricious. All right. Thank you, Mr. Griglio. Thank you. Hershey for rebuttal. Thank you, Your Honors. Why don't you just pick up on that last statement? They treated all 31 the same and considered all the factors. Right. So I think that there are two things there. The first is, it's true that 31 refineries had the same relief. There were five refineries that were not included in the ACA. And it just so happens that those five refineries were the five refineries that EPA had previously determined based on its evaluation of their individual facts that they submitted that they were not qualified for SRE exemption. So the decision, both in terms of those who benefited from it and those who did not, maps entirely onto fact-based determinations that EPA previously made. And just because there is the same outcome does not mean it is a national, it's nationwide in scope and effect. Right. EPA could have previously, if it wanted to, taken all of the smaller refinery exemption decisions that it made and issued them in one decision and said, look, look at the nationwide scope and effect. This affects 31 refineries, seven circuits, you know, whatever the numbers are that get thrown around. It could have done that. It's just packaging. It's still as to each individual refinery, you are exempt because we previously determined based on facts and circumstances relevant only to you that you are exempt from SRE compliance, from RFS compliance, excuse me, and therefore you are entitled to this relief in this action. EPA, by the way, has always taken the position that SRE decisions, decisions based on whether a small refinery is exempt from compliance is a regional, a regionally applicable decision. It's always taken that position. In any case, Your Honor, I want to address Mr. Grillo's point that we are seeking extra relief. That is absolutely not the case. We're not seeking- You mean prior to today? Or you said they've always taken, I don't understand- Yeah, yes, Your Honor. Prior to today, in previous cases, EPA in its briefs, and we cite this in our briefs, Your Honor, EPA in its briefing in SRE denial actions has recognized, and the words they use, SRE denial actions are quintessentially local in nature. That's always been their position because they are. Now, in terms of the issue of whether when he was seeking extra relief or somehow we're seeking to enrich ourselves, it's just not the case. We're seeking to be made whole. That's all we want is to be made whole. We suffered significant losses because of EPA's treatment of us previously. Their unlawful delay in granting our petition, it caused us tens of millions of dollars of losses, and we are just here to try to be made whole. Now, I want to emphasize this point. Mr. Grillo did not argue, and EPA has never argued, that we weren't entitled to rent replacement relief at one time. They've never explained why we didn't, at one point in time, have an entitlement to rent replacement relief because we did. We were similarly situated to the parties in Pruitt and in Kern Oil. We had that entitlement. There's no doubt that by denying, by making us subject to the denial action and revoking our 2018 SRE, that that works a hardship on us when they strip us of that entitlement. We had a legal entitlement to replacement rents that they stripped away purportedly through the denial action, and they need to address that hardship. And they say in the April compliance and the alternative compliance action, they say that they recognize that their decision is governed by the Americans with Clean Energy case that we said in our brief. And that case says that the agency, when it acts retroactively, has the obligation to consider and mitigate the hardship. They recognize that. It's on pages eight and nine of the alternative compliance action. They say Americans with Clean Energy applies here. They recognize it to consider and mitigate. They did neither. They don't consider it. They certainly didn't mitigate. The only thing they did is in a post-hook rationalization, which we saw for the first time in their response brief, they say, oh, well, when it was a harm because it was revoked. That's not good enough. That's not what the law entitles us to. The law requires them to explain the reasons for their actions at the time that they act. And that, again, is the data marketing case that we cite. At the time the agency acts, it's on notice. There is a challenge that was remanded by us saying we have rent replacement entitlement. They have to explain why they're denying it to us at that time. They can't do it after the fact. The last thing I want to touch on here is the Kernel Oil case, because Mr. Grillo went through why he thinks we're different from Pruitt. What Kernel Oil stands for is that our situation, which is on all fours of Kernel Oil, is also on all fours of Pruitt. The harm to the petitioners in Pruitt, who originally denied the exemption and granted it, is the same harm we suffered from a delay in our petition being granted. In either situation, the small refineries had to tender and retire reins because EPA had improperly not granted their petition in time, either because it denied it or just delayed it. And in both cases, in Pruitt and Kernel Oil, the courts found that those small refineries were entitled to rent replacement relief. Now, in Kernel Oil, just as in here, there was a remand at first when the court, Ninth Circuit, instructed EPA to explain why the petitioner was not entitled to rent replacement relief. And when EPA failed to do it, as they failed to do here, the court instructed EPA at that point to provide rent replacement relief because it knew it could not count on EPA to do the right thing if it simply remanded again with a blank check. We ask for the same instruction from this court here. We've been waiting five years for this relief. Thank you very much, Your Honors. All right. Thank you, Mr. Hershey. Your case is under submission.